## HOLLINGSWORTH v. CROSSETT LUMBER CO.*

No. 5032.

Court of Appeal of Louisiana.
Second Circuit.
April 1, 1935.

See, also, 153 So. 722.

Todd & Todd, of Bastrop, for appellant.

Madison, Madison & Fuller, of Bastrop, for appellee.

MILLS, Judge.

The Crossett Lumber Company has a sawmill at Crossett, Ark., and carries on a general logging business in Morehouse parish, La. After cutting out of its timber holdings the logs suitable for the sawmill, it gleaned from the pine tops and the broken and smaller trees the logs suitable for pulpwood. These it sold to the Southern Kraft Corporation, delivered at its paper mill in Bastrop.

The Crossett Lumber Company contracted with Sam Hollingsworth to haul and deliver the pulpwood cut by it for so much per cord. Hollingsworth furnished his own truck and labor and had entire control of the hauling. That he was an independent contractor is not only established by the evidence, but by the following admission in the answer: " * * * That Sam Hollingsworth is and was an independent contractor and your respondent had nothing whatever to do with said injury or said death."

Sam Hollingsworth employed his brother, Enoch Hollingsworth, to drive and, with the aid of a helper, to load and unload one of the trucks engaged in hauling the pulpwood. Enoch was paid $1.75 per day, working six days per week. On June 2, 1932, while engaged in the above work, a log which he had thrown to the top of the load fell back, its end striking him in the lower chest and abdomen and knocking him down. He did no more work that day, which was Thursday. On Saturday, faced with the necessity of providing for a wife, four children in being and one about to be born, he went back on the job, confining his efforts to driving the truck. He did this again on Monday and Tuesday, until forced by his injury to give up. His wife applied humble home remedies until his condition became so serious that he was sent to the office of Dr. J. N. Jones. The doctor testifies that he found the chest and abdomen bruised, and that the patient complained of pain in that region. He strapped him up with adhesive tape and sent him home. In a few days he was called to that home, where he found the patient vomiting blood and suffering considerable pain. Upon his advice, Enoch was moved to the Bastrop General Hospital, where he treated him until death occurred on June 19th.

Dr. Jones testified positively that the bruises and symptoms were of such a character that no one could believe otherwise than that a traumatic injury was the cause of the hemorrhages and resulting death. He says that the patient gave a history of his injury, as recited above. The testimony of Dr. Jones is not discredited in any way. Defendant does offer Dr. Smith I. Sims, who, while hurrying to attend his own patient, was called in by the alarmed friends of Enoch to at-

*Rehearing denied May 2, 1935.

tempt to stay a hemorrhage. He says that the man was vomiting blood and apparently dying; that he saw no bruises, but made no thorough examination in his haste to attend his own patient.

It is shown that the deceased was an exceptional workman. He was not addicted to hemorrhages prior to the accident. His disability followed it promptly and steadily grew worse. His death occurred within seventeen days of the receipt of the blow, and reasonably and logically resulted therefrom. The brave efforts of the injured man to continue his work and avoid expense, together with his speedy death, dissipates any suspicion of fraud or malingering. His white helper, Haywood Lankston, saw him knocked down by the log and was shown his bruised body. He testifies to Enoch's inability to work thereafter and to his pain and suffering following the injury. Clyde McDougal, who was hauling on the same job, says that he was told about the accident when the trucks reached the mill and that he helped unload in Enoch's place.

Strange to say, the principal defense witness is deceased's own brother, Sam Hollingsworth. He claims that, though he lived within one hundred yards of Enoch, was with him constantly, and took him to the hospital, he heard nothing about any accident or injury until six months later. He says: "Well, I don't know anything except what I have heard. Of course, I would like to see the woman have something if she is entitled to it, but I think it is a frame-up myself. If he was hurt, I never did know anything about it at all."

In the light of the testimony of Dr. Jones as to the evidences of trauma, and the history given by deceased, as well as the testimony of other relatives, this is hard to believe, particularly as Dr. Jones was refused permission by this same brother to have an autopsy performed to determine the exact cause of death. It is inconceivable that an autopsy was considered unless there was some discussion as to the cause of death.

 Without going further into detail, we will say that we are satisfied that the deceased suffered the accident claimed and died from its effects.

The widow of deceased, appearing for herself and her now five minor children, all dependents, is appealing from a judgment below rejecting her demands against the Crossett Lumber Company for compensation, under Act No. 20 of 1914, as amended. We are not favored with a written opinion by the trial judge, so we do not know whether the rejection was based upon matters of law or fact.

Section 6 of the act, as amended by Act No. 85 of 1926, p. 113, provides: "That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

It being established that the cutting and hauling of pulpwood was a part of defendant's business and that Sam Hollingsworth, having independently contracted to do the hauling, employed Enoch in the work, and that the death of deceased was due to an injury incurred while so employed, from an accident arising out of the employment, plaintiff has made out her case, unless she has forfeited her right to recover by failure to give statutory notice.

The act requires in section 11, as amended by Act No. 247 of 1920, p. 473, that notice of the injury shall be given to the employer within six months after the date of injury or death. We are satisfied that, through knowledge, Sam Hollingsworth, the immediate employer, had such notice, but that defendant company, his principal, did not until a little more than six months after the death.

 Section 12 of the act, as amended by Act No. 38 of 1918, p. 58, requires the posting at a conspicuous point about the place of business of a printed warning, calling the attention of employees to the necessity of giving notice and to the parties to be notified. The penalty for failure to comply with this requirement is the extension of the time for notice from six to twelve months. It is not shown that such notice was posted. Defendant company received notice within the twelve months.

 Subsection 2 of section 11, as amended by Act No. 247 of 1920, p. 473, provides that want of notice shall not be a bar, if it be shown that the employer has not been prejudiced by the failure. The only prejudice claimed in this case is that defendant might have supplied better medical attention. As no criticism is made of the treatment ad-

ministered by Dr. Jones, we do not think the possibility constituted material prejudice. Furthermore, section 11 requires that notice be given the employer. There is no requirement that, where one is employed by a contractor, notice must also be given the principal. The defense of want of notice is not good.

Deceased was earning a weekly wage of $10.50. The doctor's bill was $100. The hospital bill was $51.25, upon which friends had paid the sum of $15. Under the provisions of section 8, subsec. 2 (E), par. 6, of the act, as amended by Act No. 242 of 1928, p. 359, a widow with three or more small children is entitled to receive 65 per cent. of deceased's weekly wages for a period of 300 weeks.

For the reasons above assigned, the judgment appealed from is reversed, and judgment is now rendered in favor of plaintiff, Mrs. Lillie Hollingsworth, for the common benefit of herself and her minor children, Almeta, Pauline, Mary, Henry, and Virginia Hollingsworth, against defendant, Crossett Lumber Company, in the full sum of $6.82 per week for three hundred weeks, beginning June 19, 1932, with 5 per cent. per annum interest on each weekly payment from the date it is due until paid, and for the further sum of $136.25 medical expenses, and for all costs of both courts.